FILED ___ ENTERED
LODGED ___ RECEIVED

AO 106 (Rev. 04/10) Application for a Search Warrant

SEP 21 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Google, Inc. Subject Accounts 1-3, further described in
Attachment A

)
)
)
)
)

Case No.  **MJ18-441**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Google, Inc. Subject Accounts (1) toddsmckennon@gmail.com (2) lindsayjmckennon@gmail.com (3) OliviaDreamLover@gmail.com, further described in Attachment A, attached hereto and incorporated herein.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein by this reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1952 | Interstate and foreign travel or transportation in aid of racketeering enterprises |
| 18 U.S.C. § 2421 | Transportation of any individual in interstate or foreign commerce |
| 18 U.S.C. § 1956 | Money Laundering |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Joshua Anderson, Special Agent, FBI**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 09/21/2018 _____

_____
*Judge's signature*

City and state: Seattle, Washington

**Paula L. McCandlis, United States Magistrate Judge**
*Printed name and title*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTACHMENT A**

### **GOOGLE, INC. ACCOUNTS TO BE SEARCHED**

The electronically stored data, information and communications contained in, related to, and associated with, including all preserved data associated with the following Google, Inc. accounts, that are stored at premises controlled by Google, Inc., a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California:

| | |
|---|---|
| toddsmckennon@gmail.com, | (Subject Account #1) |
| lindsayjmckennon@gmail.com and | (Subject Account #2) |
| OliviaDreamLover@gmail.com | (Subject Account #3) |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  **ATTACHMENT B**

2  **I.  Section I - Information to be disclosed by Google, Inc., for search:**

3  　　　To the extent that the information described in Attachment A is within the

4  possession, custody, or control of Google, Inc., including any data, messages, records,

5  files, logs, or information that has been deleted but is still available to Google, Inc., or

6  has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google, Inc. is

7  required to disclose the following information to the government for each account or

8  identifier listed in Attachment A:

9  　　　　　a.　　All electronic mail content and/or preserved data (including e-mail,

10  attachments, and embedded files);

11  　　　　　b.　　All subscriber records associated with the specified account,

12  including 1) names, e-mail addresses, and screen names; 2) physical addresses; 3) records

13  of session times and durations; 4) length of service (including start date) and types of

14  services utilized; 5) telephone or instrument number or other subscriber number or

15  identity, including any temporarily assigned network address such as internet protocol

16  address, media access card addresses, or any other unique device identifiers recorded by

17  Google in relation to the account; 6) account log files (login IP address, account

18  activation IP address, and IP address history); 7) detailed billing records/logs; 8) means

19  and source of payment; and 9) lists of all related accounts;

20  　　　　　c.　　all contact lists;

21  　　　　　d.　　all Google Calendar content;

22  　　　　　e.　　all Google Drive content (including backups of any apps stored on

23  Google Drive;

24  　　　　　f.　　all Google Sheets content;

25  　　　　　g.　　all Google Forms content;

26  　　　　　h.　　all Google Apps Script content;

27  　　　　　i.　　all Google Maps content;

28  　　　　　j.　　all Google Photos content;

ATTACHMENT B - 1
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1            k.      all Google Search Console content;

2            l.      all Google Web & Activity content;

3            m.      all Google Chrome Sync content;

4            n.      all Google Location History content;

5            o.      all Google Developers Console content;

6            p.      all Google Voice content;

7            q.      all Android content;

8            r.      all Google Alerts content;

9            s.      all Google Profile content, including all Google+ content;

10            t.      all account history, including any records of communications

11 between Google and any other person about issues relating to the accounts, such as

12 technical problems, billing inquiries, or complaints from other users about the specified

13 account. This to include records of contacts between the subscriber and the provider's

14 support services, as well as records of any actions taken by the provider or subscriber in

15 connection with the service.

16       This Search Warrant also requires Google to produce the following information

17 for accounts linked to the SUBJECT ACCOUNTS (collectively the "**LINKED**

18 **SUBJECT ACCOUNTS**"):

19            a.      a list of all other Google accounts linked to the SUBJECT

20 ACCOUNTS because of cookie overlap;

21            b.      a list of all other Google accounts that list the same SMS phone

22 number as  the SUBJECT ACCOUNTS;

23            c.      a list of all other Google accounts that list the same recovery e-mail

24 address as the SUBJECT ACCOUNTS;

25            d.      and a list of all other Google accounts that shared the same creation

26 IP address the SUBJECT ACCOUNTS within 30 days of creation;

27

28

ATTACHMENT B - 2
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1           e.     Subscriber records for each of the Linked Subject Accounts

2 including 1) names, e-mail addresses, and screen names; 2) physical addresses; 3) records

3 of session times and durations; 4) length of service (including start date) and types of

4 services utilized; 5) telephone or instrument number or other subscriber number or

5 identity, including any temporarily assigned network address such as internet protocol

6 address, media access card addresses, or any other unique device identifiers recorded by

7 Google in relation to the account; 6) account log files (login IP address, account

8 activation IP address, and IP address history); 7) detailed billing records/logs; 8) means

9 and source of payment; and 9) lists of all related accounts.

10          f.     All records and other information (not including the contents of

11 communications) relating to the Linked Subject Accounts, including:

12             i.     Records of user activity for each connection made to or from

13 the Account(s), including log files; messaging logs; the date time, length, and method of

14 connections, data transfer volume; user names; and source and destination Internet

15 Protocol Addresses; cookie IDs; browser type;

16             ii.     Information about each communication sent or received by

17 the Account(s), including the date and time of the communication, the method of

18 communication, and the source and destination of the communication (such as source and

19 destination e-mail addresses, IP addresses, and telephone numbers);

20             iii.     All records pertaining to devices associated with the accounts

21 to include serial numbers, model type/number, IMEI, phone numbers, MAC Addresses.

22 **II.**     **Information to be seized by the government**

23       All information described above in Section I that constitutes fruits, contraband,

24 evidence and instrumentalities of (a) Interstate and foreign travel or transportation in aid

25 of racketeering enterprises in violation of 18 U.S.C § 1952; (b) Transportation for

26 purposes of prostitution in violation of 18 U.S.C. § 2421;  and (c) Money laundering in

27 violation of 18 U.S.C. § 1956  those violations occurring between January 2017 to the

28

ATTACHMENT B - 3
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   present, for each of the SUBJECT ACCOUNTS listed on Attachment A, and any linked

2   accounts, including the following:

3           a.      Content that serves to identify any person who uses or accesses the

4   subject account or who exercises in any way any dominion or control over the account;

5           b.      Content relating to planned, attempted, or successful breaches of or

6   intrusions into victims' computers or networks;

7           c.      Content relating to the creation, acquisition, transfer, sharing, testing

8   or sale of malicious software;

9           d.      Content related to computer programing, software operations, and

10  networking;

11          e.      Content relating to the acquisition, transfer, sharing, sale, or disposal

12  of servers, e-mail accounts, or other web services accounts used by the account holder or

13  co-conspirators to facilitate computer intrusions;

14          f.      Content that identifies victims of computer intrusions perpetrated by

15  the account holder or co-conspirators:

16          g.      Content that constitute communications in furtherance of the crimes

17  enumerated above;

18          h.      Content relating to the acquisition, transfer, distribution, sharing or

19  sale of stolen credit card, debit card, gift card, or payment card numbers;

20          i.      Content that may identify assets including bank accounts,

21  commodities accounts, trading accounts, personal property and/or real estate that may

22  represent proceeds of computer intrusion activity or fraud or are traceable to such

23  proceeds;

24          j.      Content that may reveal the current or past location of the individual

25  or individuals using the subject account;

26          k.      Content that may reveal the identities of and relationships between

27  co-conspirators;

28

ATTACHMENT B - 4
USAO #2017R01046

1         l.      Content that may identify any alias names, online user names,

2  "handles" and/or "nics" of those who exercise in any way any dominion or control over

3  the specified account as well as records or information that may reveal the true identities

4  of these individuals;

5         m.     Other log records, including IP address captures, associated with the

6  specified account;

7         n.      Subscriber records associated with the specified account, including

8  1) names, e-mail addresses, and screen names; 2) physical addresses; 3) records of

9  session times and durations; 4) length of service (including start date) and types of

10  services utilized; 5) telephone or instrument number or other subscriber number or

11  identity, Including any temporarily assigned network address such as internet protocol

12  address, media access card addresses, or any other unique device identifiers recorded by

13  Google, Inc. in relation to the account; 6) account log files (login IP address, account

14  activation IP addresses, and IP address history); 7) detailed billing records/logs; 8) means

15  and source of payment; and 9) lists of all related accounts;

16         o.      Records of communications between Google, Inc. and any person

17  purporting to be the account holder about issues relating to the account, such as technical

18  problems, billing inquiries, or complaints from other users about the specified account.

19  This to include records of contacts between the subscriber and the provider's support

20  services, as well as records of any actions taken by the provider or subscriber as a result

21  of the communications.

22         p.      Android identification number, MEID, and cellular telephone

23  number

24         q.      Information identifying accounts that are linked or associated with

25  the SUBJECT ACCOUNTS.

26

27

28

ATTACHMENT B - 5
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  # AFFIDAVIT OF JOSHUA ANDERSON

2  STATE OF WASHINGTON      )

3                                      ) ss

COUNTY OF KING            )

4

5  I, Joshua Anderson, having been duly sworn, state as follows:

6  ## AFFIANT BACKGROUND

7         1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and

8  have been so since January 2017. I am currently assigned to an Organized Crime and

9  Public Corruption Squad within the Seattle Division of the FBI. During my employment

10 with the FBI, I have investigated various federal criminal violations, to include human

11 trafficking and prostitution. I have attended the Federal Bureau of Investigation Basic

12 Field Training Course for new Special Agents, and attended training in prostitution and

13 human trafficking investigations at the Seattle Field Office. I have participated in

14 multiple prostitution and human trafficking investigations, to include criminal violations

15 of federal human trafficking-related offenses, during the course of which I have

16 participated in physical surveillance and executions of warrants.

17        2.      I am familiar with common methods of investigating human trafficking and

18 prostitution organizations, and have become familiar with the methods of operation of

19 human traffickers, including, but not limited to: their methods of transporting sex

20 workers, advertising prostitution services, concealing prostitution activities, their use of

21 cellular telephones, their use of mobile applications, their use of code words, counter-

22 surveillance, and other methods of avoiding detection of law enforcement. I am also

23 familiar with the various methods of concealing and laundering the proceeds of

24 prostitution activities.

25 ## EMAILS TO BE SEARCHED

26        3.      I make this Affidavit in support of an application for a Search Warrant

27 authorizing the examination of the following email accounts (the "Subject Email

28 Accounts"): toddsmckennon@gmail.com, lindsayjmckennon@gmail.com and

AFFIDAVIT OF JOSHUA ANDERSON - 1
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   OliviaDreamLover@gmail.com including all subscriber and log records associated with
2   these accounts.

3       4.      The domain name gmail.com is owned and operated by webhost and email
4   service provider Google, Inc. ("Google"), located at 1600 Amphitheatre Parkway,
5   Mountain View, California, 94043.  The information to be searched is described in the
6   following paragraphs and in Attachment B, and is stored at a premises controlled by
7   Google.

8       5.      This affidavit is made in support of an application for a search warrant
9   under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to
10  disclose to the government copies of the information (including the content of
11  communications) further described in Section I of Attachment B.  Upon receipt of the
12  information described in Section I of Attachment B, government-authorized persons will
13  review that information to locate the items described in Section II of Attachment B.

14                          **SCOPE OF AFFIDAVIT**

15      6.      The facts set forth in this Affidavit are based on my own personal
16  knowledge; knowledge obtained from other individuals during my participation in this
17  investigation, including other law enforcement officers; review of documents and records
18  related to this investigation; communications with others who have personal knowledge
19  of the events and circumstances described herein; and information gained through my
20  training and experience.  Because this Affidavit is submitted for the limited purpose of
21  establishing probable cause in support of the Application for a Search Warrant, it does
22  not set forth each and every fact that I, or others, have learned during the course of this
23  investigation but rather those relevant to the question of whether probable cause exists to
24  issue the requested search warrant.

25                          **THE INVESTIGATION**

26      7.      In August of 2017, a woman named L.M. contacted the Federal Bureau of
27  Investigation (FBI) in Seattle, Washington, and provided information about her pimp,
28

AFFIDAVIT OF JOSHUA ANDERSON - 2
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Todd McKennon.  L.M. explained that McKennon had recently assaulted her and that she

2    was fearful of him.

3          8.   During this interview L.M. stated that she met McKennon after responding

4    to an advertisement on Craigslist about becoming a model.  However, when L.M. met

5    McKennon, instead discussing opportunities in modeling, McKennon recruited her to

6    become a sex worker for him.

7          9.   In early 2017, L.M. began working for McKennon. L.M. stated that

8    McKennon had her post prostitution advertisements on various internet web sites.

9    McKennon would rent hotel rooms at local hotels where L.M. would meet the

10   prostitution customers.  She said that some of the hotels McKennon used were the

11   Residence Inn by Marriott Bellevue, Courtyard by Marriott Kirkland, Hyatt Regency

12   Bellevue, Hyatt House Bellevue and Hyatt House Redmond.

13        10.   L.M. also stated that on one occasion, McKennon had her fly to Hawaii and

14   engage in prostitution with a high-paying customer for approximately one week.[1]

15        11.   L.M. stated McKennon would split the prostitution proceeds with her.[2]

16   McKennon would have L.M. deposit his share of the proceeds into his bank account by

17   utilizing a debit card.

18        12.   After a period of time, L.M. stated that she and McKennon became

19   romantically involved and she began living with him.  L.M. believed, based on what she

20   learned from McKennon, that he has been involved in prostitution for approximately two

21   decades.  According to L.M., McKennon was known as "Mr. Kirkland" and that he had

22   several sex workers consistently working for him in Kirkland, Bellevue, Redmond, and

23   Seattle.  L.M. also stated that McKennon had supported himself for years through

24   prostitution.

25   ────────────────

26   [1] I located an advertisement posted by L.M. that stated that she had recently returned from Hawaii but further
details were not provided.

27   [2] Initially, McKennon allowed L.M. to keep 60% of the proceeds but later reduced it to 50%.

28

AFFIDAVIT OF JOSHUA ANDERSON - 3
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

13.     L.M. believed that McKennon would also occasionally facilitate and
arrange for out of state prostitution activities.  In approximately May 2017, McKennon
sent her to Hawaii to work for five days with one customer.

14.     During the August 2017 interview, L.M. indicated that she was fearful of
McKennon and expressed a desire to get away from him.  The FBI assisted L.M. in flying
to Alaska, where she was from, as a way to protect her.  The FBI lost contact with L.M.
after she returned to Alaska.  A short time later, the FBI learned of L.M. was back in
Washington working for McKennon again.  L.M. and McKennon appear to be
romantically involved at this point and they also live together.

15.     In checking McKennon's background, I learned that in 2013 McKennon
was investigated by the Kirkland Police Department for promoting prostitution.  I
received and reviewed Kirkland Police report WA017080.  In that report, a concerned
citizen contacted the Kirkland Police Department to complain about suspicious activity
occurring at neighboring townhouse in the Springtree Condos.  The complainant stated
that he/she and other neighbors had observed what they believed to be prostitution
activity occurring at the townhouse located at 11408 105th Place NE, Kirkland,
Washington.  The complainant explained that they noticed males in high priced cars park
nearby and enter the residence.  The males stayed for exactly one hour and would then
leave.  Within 10 minutes of the men leaving the neighbors would see a woman leaving
the residence in a taxi.  Within 30 minutes of the woman leaving, a black GMC Yukon
arrived backed up to the garage.  The driver of the Yukon (later identified as Todd
McKennon) would collect the garbage bags, and often a white envelope, then leave.

16.     The activity stopped when the owner of the condo sold it.  The owner of the
condominium has been identified as Shelly Straw who is Todd McKennon's former
girlfriend and mother of his child. It appears that McKennon was never charged with
promoting prostitution or any other criminal activity arising out of that investigation.

17.     Based on the information provided by L.M. the FBI and local authorities
began parallel investigations of Todd McKennon's sexual trafficking activities.

AFFIDAVIT OF JOSHUA ANDERSON - 4
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    18.    As part of that investigation, local law enforcement officers obtained a state

2  issued search warrant for the internet classified advertising site, TNA Board, for L.M.'s

3  advertisements.  TNA Board is an online site that is used for advertising sexual services

4  such as commercial sex acts.  In reviewing the information provided by TNA Board,

5  agents found an advertisement, posted on March 20, 2018, for L.M. under pseudonym

6  "Olivia Heart."  In this advertisement, L.M. is offering sex services for $500/hour in the

7  Seattle, Bellevue, Kirkland and Redmond areas.  The advertisement has graphic, sexually

8  explicit photos of L.M.  In the advertisement L.M. says "Come play and misbehave with

9  me! Your ultimate pleasure provider!"  Further stating, "Your wish is my command,

10  come and spend some naughty time with me!"

11    19.    The state law enforcement also obtained a state search warrant for L.M.'s

12  advertisements on another online advertising site called CityVibe.  In reviewing the

13  information provided by CityVibe, law enforcement officers found an advertisement for

14  L.M. posted on February 19, 2018.  In this advertisement, L.M., using her pseudonym

15  "Olivia Heart," is offering sex services for $500/hour under in the Monterey, San Jose

16  area of California.  The advertisement contains graphic, sexually explicit photos of L.M.

17  This advertisement states that L.M. "loves to please a man in whichever way he wants to

18  be pleased."  It further states, "I have a pretty good knack of finding out your turn

19  ons…And I will be sure you know my turn ons."  L.M.'s advertisement goes on to claim

20  she is, "[v]ery open minded and would love to share with you my exclusive "SND" gift

21  (sexy, naughty, dirty) for $500/hour."  Finally it states, "I promise you will not be

22  disappointed."

23    20.    As part of the investigation, myself, as well as other FBI agents have

24  obtained bank records.  Based on the records we learned that McKennon was renting

25  rooms at the Hyatt Regency Hotel in Bellevue, the Residence Inn by Marriott Seattle

26  Bellevue in Bellevue, the Hyatt House in Redmond, and the Courtyard by Marriott

27  Seattle Kirkland in Kirkland, Washington.  We then subpoenaed booking records from

28  those hotels and learned that McKennon was booking rooms at these hotels frequently.

AFFIDAVIT OF JOSHUA ANDERSON - 5
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     21.    According to the general manager at the Residence Inn Marriott in

2  Bellevue, McKennon has an elite membership with their national hotel chain in which he

3  maintains through reserving rooms for a minimum of 60 nights per year. Furthermore,

4  according to the general manager at the Hyatt House in Redmond and Bellevue,

5  McKennon has an elite membership as a "Globalist" with the Hyatt Hotel brand that is

6  earned by reserving rooms for a minimum of 55 nights per year. On multiple occasions,

7  McKennon reserves rooms at the Hyatt Regency in Bellevue utilizing the "Triple A"

8  discount rate in which he is upgraded to a suite. Furthermore, the "Globalist" status

9  allows for early check-in, which surveillance has observed, as well as for later than

10  normal checkout. On one instance, surveillance observed individuals departing the hotel

11  room after 4pm and McKennon was not charged for that night.

12     22.    Myself and other law enforcement agents have conducted six surveillances

13  in the past three months at various locations and have had a chance to observe the

14  operation criminal enterprise. These locations include:

15     • Residence Inn by Marriott Seattle Bellevue on January 31, 2018, February 26,

16        2018, and March 23, 2018, located at 14455 NE 29th Place, Bellevue,

17        Washington,

18     • Courtyard by Marriott Seattle/ Kirkland located at 11215 NE 124th Street,

19        Kirkland, Washington, on January 31, 2018 and April 13, 2018;

20     • Hyatt House Seattle Redmond located at 15785 Bear Creek Parkway,

21        Redmond, Washington, on May 17, 2018 and May 18, 2018.

22     23.    The surveillance teams observed McKennon on the premises of all of these

23  hotels, typically checking in and then either dropping L.M. off or picking L.M. up. At no

24  point during surveillance was McKennon observed staying in a hotel room for which he

25  had a reservation.

26     24.    Over the course of these surveillances, L.M. and another female, later

27  identified as D.H.S., who was identified based on Washington State Driver's License

28  information obtained during surveillance, are the predominant sex workers. D.H.S. was

AFFIDAVIT OF JOSHUA ANDERSON - 6
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   identified after arriving at a known hotel, entering the hotel room that McKennon had

2   reserved, working for a couple hours and then departing in her registered vehicle. Both

3   L.M. and D.H.S. have been positively identified entering the rooms being used by

4   McKennon while McKennon is not at the hotel. D.H.S. and L.M. are very discrete when

5   entering or exiting the hotels. They have not been seen stopping at the front desk to

6   obtain a key for access to the room. They have been seen parking in hotel back lots,

7   using the side entrances of the hotels and using the stairs as opposed to using the main

8   entrance and the elevator at multiple hotel properties.

9        25.    During the surveillances multiple men have been observed exhibiting

10   behaviors consistent with being sex customers. After arriving at the parking in a lot and

11   the customers have been observed waiting in their car. Based on my experience the

12   customers wait in the car until they receive a text message informing the customer which

13   room to go to. The men do not stop at the front desk to obtain a room key or to obtain

14   directions to the rooms. These customers stay in the room for approximately one hour

15   which is the time period noted in the escort ads.

16        26.    During a surveillance at the Hyatt Regency in Bellevue on June 29, 2018,

17   L.M. and McKennon were observed arriving to the hotel room together. McKennon and

18   L.M. left for a short period of time and L.M. returned alone. A few minutes later, a male

19   customer entered the room. After approximately one hour, the male customer departed.

20   A few minutes later, McKennon re-entered the room and he and L.M. departed together,

21   proceeding to Daniel's Broiler for drinks and dinner.

22        27.    McKennon's behavior is consistent with someone who is running a

23   criminal sex organization. He has been observed arriving at hotels on the day of check-in

24   to pick up keys, drop off and pick up L.M. for appointments.

25        28.    I obtained McKennon's bank account records for Bank of America, account

26   number xxxxxxxx3034, via grand jury subpoena. Based on these records, for the period

27   between 2016 to the present date over $500,000 has been deposited into this Account.

28   The FBI has verified that approximately $330,000 as being cash deposits. Records

AFFIDAVIT OF JOSHUA ANDERSON - 7
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  obtained from the Bank of America of account ending in 3034, show that many of the

2  cash deposits are made through an automated teller machine or at the counter.  The bank

3  records the FBI has obtained shows McKennon, L.M., and D.H.S. making cash deposits

4  into the 3034 account.  For example in a two week period, the records show that $11,000

5  in cash was deposited into the account.  The records show that McKennon will

6  subsequently use the funds from this account to pay for hotel rooms and online

7  advertisements.

8       29.     Since 2012 according to the Washington State Employment Security

9  Department McKennon has reported no wages.

10      30.     In the 2017 interview, L.M. disclosed that she and Mckennon used a

11 suitcase which had sex supplies and garbage bags for cleaning up.  During the

12 surveillance, both L.M. and D.H.S. have been observed with a roller bag while entering

13 the hotel.  On one occasion D.H.S. was observed arriving at a hotel, carrying multiple

14 bags to include the roller bag while entering the hotel room.  Later, D.H.S. travelled to

15 McKennon's residence where she stayed for approximately two hours before returning to

16 the hotel where a male visited her hotel room.

17      31.     The investigation has developed evidence that

18 toddsmckennon@gmail.com, lindsayjmckennon@gmail.com and

19 oliviadreamlover@gmail.com are being used in connection with the criminal scheme.

20 McKennon is utilizing the email toddsmckennon@gmail.com and

21 lindsayjmckennon@gmail.com for any correspondence with hotels in furtherance of his

22 criminal prostitution enterprise.  As recently as June 2018, L.M. is utilizing

23 oliviadreamlover@gmail.com to post advertisements in furtherance of prostitution

24 activities.

25      **BACKGROUND REGARDING INFORMATION TECHNOLOGY**

26      32.     Google is an email service provider. Email service providers provide their

27 clients/subscribers with a dedicated email domain name and space on their servers for the

28 storage of client emails and associated files.  Therefore, the computers of Google are

AFFIDAVIT OF JOSHUA ANDERSON - 8
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  likely to contain stored electronic communications (including retrieved and un-retrieved

2  email for Gmail users) and information concerning clients/subscribers and their use of

3  Google email services, respectively, such as account access information, email

4  transaction information, and account application information.

5       33.     The term "computer" as used herein is defined in 18 U.S.C. § 1030(e)(1),

6  and includes an electronic, magnetic, optical, electrochemical, or other high speed data

7  processing device performing logical, arithmetic, or storage functions, and includes any

8  data storage facility or communications facility directly related to or operating in

9  conjunction with such device.

10       34.     As explained herein, information stored in connection with an e-mail

11  account may provide crucial evidence of the "who, what, why, when, where, and how" of

12  the criminal conduct under investigation, thus enabling the United States to establish and

13  prove each element or alternatively, to exclude the innocent from further suspicion. In my

14  training and experience, the information stored in connection with an e-mail account can

15  indicate who has used or controlled the account.  This "user attribution" evidence is

16  analogous to the search for "indicia of occupancy" while executing a search warrant at a

17  residence.  For example, e-mail communications, contacts lists, and images sent (and the

18  data associated with the foregoing, such as date and time) may indicate who used or

19  controlled the account at a relevant time.

20       35.     Further, information maintained by the e-mail provider can show how and

21  when the account was accessed or used.  For example, as described below, e-mail

22  providers typically log the Internet Protocol ("IP") addresses from which users access the

23  email account along with the time and date.  By determining the physical location

24  associated with the logged IP addresses, investigators can understand the chronological

25  and geographic context of the e-mail account access and use relating to the crime under

26  investigation.  This geographic and timeline information may tend to either inculpate or

27  exculpate the account owner.  Additionally, information stored at the user's account may

28  further indicate the geographic location of the account user at a particular time (e.g.,

AFFIDAVIT OF JOSHUA ANDERSON - 9
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

location information integrated into an image or video sent via email). Lastly, stored electronic data may provide relevant insight into the e-mail account owner's state of mind as it relates to the offense under investigation. For example, information in the e-mail account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement). Based on my training, experience and knowledge, I know the following: the internet is a global system of interconnected computer networks that use the standard Internet Protocol Suite (TCP/IP) to serve billions of users worldwide. It is a network of networks that consists of millions of private, public, academic, business, and government networks, of local to global scope, that are linked by a broad array of electronic, wireless and optical networking technologies. The internet can also be defined as a worldwide interconnection of computers and computer networks that facilitate the sharing or exchange of information among users. The internet carries a vast range of information resources and services, such as the inter-linked hypertext documents of the World Wide Web (WWW) and the infrastructure to support electronic mail.

36.     E-mail is a popular form of transmitting messages and files in an electronic environment between computer users. When an individual computer user sends an e-mail message, it is initiated at the user's computer, transmitted to the subscriber's mail server, and then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

37.     E-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the

AFFIDAVIT OF JOSHUA ANDERSON - 10
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   information can be used to identify the account's user or users.  Based on my training and

2   my experience, I know that even if subscribers insert false information to conceal their

3   identity, this information often provide clues to their identity, location or illicit activities.

4       38.     E-mail providers typically retain certain transactional information about the

5   creation and use of each account on their systems.  This information can include the date

6   on which the account was created, the length of service, records of log-in (i.e., session)

7   times and durations, the types of service(s) utilized, the status of the account (including

8   whether the account is inactive or closed), the methods used to connect to the account

9   (such as logging into the account via the provider's website), and other log files that

10  reflect usage of the account.  In addition, e-mail providers often have records of the

11  Internet Protocol address ("IP address") used to register the account and the IP addresses

12  associated with particular logins to the account.  Because every device that connects to

13  the Internet must use an IP address, IP address information can help to identify which

14  computers or other devices were used to access the e-mail account.

15      39.     In some cases, e-mail account users will communicate directly with an e-

16  mail service provider about issues relating to the account, such as technical problems,

17  billing inquiries, or complaints from other users.  E-mail providers typically retain

18  records about such communications, including records of contacts between the user and

19  the provider's support services, as well records of any actions taken by the provider or

20  user as a result of the communications.  In my training and experience, such information

21  may constitute evidence of the crimes under investigation because the information can be

22  used to identify the account's user or users.

23  **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

24      40.     Pursuant to Title 18, United States Code, Section 2703(g), this application

25  and affidavit for a search warrant seeks authorization to permit Google and their agents

26  and employees, to assist agents in the execution of this warrant.  Once issued, the search

27  warrant will be presented to Google, with direction that the companies should identify the

28

AFFIDAVIT OF JOSHUA ANDERSON - 11
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  e-mail account described in Attachment A as well as other subscriber and log records

2  associated with the account, as set forth in Section I of Attachment B to this Affidavit.

3       41.     The search warrant will direct Google to create an exact copy of the

4  specified count and records.

5       42.     All forensic analysis of the data will employ only those search protocols

6  and methodologies reasonably designed to identify and seize the items identified in

7  Section II of Attachment B to the warrant.  Based on my experience and training, and the

8  experience and training of other agents with whom I have communicated, it is necessary

9  to review and seize a variety of e-mail communications, chat logs and documents, that

10  identify any users of the subject account and e-mails sent or received in temporal

11  proximity to incriminating e-mails that provide context to the incriminating

12  communications.

13                **REQUEST FOR NONDISCLOSURE AND SEALING**

14       43.     The government requests, pursuant to the preclusion of notice provisions of

15  Title 18, United States Code Sections 2421 and 1956; that Google, Inc. be ordered not to

16  notify any person (including the subscriber or customer to which the materials relate) of

17  the existence of this warrant for such period as the Court deems appropriate.  The

18  government submits that such an order is justified because notification of the existence of

19  this Order would seriously jeopardize the ongoing investigation.  Such a disclosure would

20  give the subscriber an opportunity to destroy evidence, change patterns of behavior,

21  notify confederates, or flee or continue his flight from prosecution.

22       44.     It is further respectfully requested that this Court issue an order sealing,

23  until further order of the Court, all papers submitted in support of this application,

24  including the application and search warrant.  I believe that sealing this document is

25  necessary because the records relate to an ongoing investigation that includes both United

26  States and foreign targets.  Premature notice of investigation to any subject may

27  jeopardize investigation.

28

AFFIDAVIT OF JOSHUA ANDERSON - 12
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CONCLUSION**

45.     Based on the forgoing, I respectfully submit that there is probable cause that the SUBJECT EMAIL ACCOUNTS contain evidence, fruits, and instrumentalities of the following federal offenses: (a) Interstate and foreign travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952; (b) Transportation for purposes of prostitution in violation of 18 U.S.C. § 2421; and (c) Money laundering in violation of 18 U.S.C. § 1956.  I therefore request that the Court issue the proposed Search Warrant.  Because the Search Warrant will be served on Google, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested Search Warrant at any time in the day or night.

46.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

DATED this __21st__ day of September, 2018.

Joshua Anderson, Affiant
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN before me this 21st day of September, 2018.

THE HONORABLE PAULA L. MCCANDLIS
United States Magistrate Judge

AFFIDAVIT OF JOSHUA ANDERSON - 13
USAO #2017R01046

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A

## GOOGLE, INC. ACCOUNTS TO BE SEARCHED

The electronically stored data, information and communications contained in, related to, and associated with, including all preserved data associated with the following Google, Inc. accounts, that are stored at premises controlled by Google, Inc., a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California:

toddsmckennon@gmail.com,          (Subject Account #1)

lindsayjmckennon@gmail.com and    (Subject Account #2)

OliviaDreamLover@gmail.com        (Subject Account #3)

ATTACHMENT A  - 1
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**I.   Section I - Information to be disclosed by Google, Inc., for search:**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, Inc., including any data, messages, records, files, logs, or information that has been deleted but is still available to Google, Inc., or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

        a.     All electronic mail content and/or preserved data (including e-mail, attachments, and embedded files);

        b.     All subscriber records associated with the specified account, including 1) names, e-mail addresses, and screen names; 2) physical addresses; 3) records of session times and durations; 4) length of service (including start date) and types of services utilized; 5) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address such as internet protocol address, media access card addresses, or any other unique device identifiers recorded by Google in relation to the account; 6) account log files (login IP address, account activation IP address, and IP address history); 7) detailed billing records/logs; 8) means and source of payment; and 9) lists of all related accounts;

        c.     all contact lists;

        d.     all Google Calendar content;

        e.     all Google Drive content (including backups of any apps stored on Google Drive;

        f.     all Google Sheets content;

        g.     all Google Forms content;

        h.     all Google Apps Script content;

        i.     all Google Maps content;

        j.     all Google Photos content;

|   |   |   |
|---|---|---|
| 1 | k. | all Google Search Console content; |
| 2 | l. | all Google Web & Activity content; |
| 3 | m. | all Google Chrome Sync content; |
| 4 | n. | all Google Location History content; |
| 5 | o. | all Google Developers Console content; |
| 6 | p. | all Google Voice content; |
| 7 | q. | all Android content; |
| 8 | r. | all Google Alerts content; |
| 9 | s. | all Google Profile content, including all Google+ content; |

10         t.     all account history, including any records of communications
11 between Google and any other person about issues relating to the accounts, such as
12 technical problems, billing inquiries, or complaints from other users about the specified
13 account. This to include records of contacts between the subscriber and the provider's
14 support services, as well as records of any actions taken by the provider or subscriber in
15 connection with the service.

16       This Search Warrant also requires Google to produce the following information
17 for accounts linked to the SUBJECT ACCOUNTS (collectively the "**LINKED**
18 **SUBJECT ACCOUNTS**"):

19       a.     a list of all other Google accounts linked to the SUBJECT
20 ACCOUNTS because of cookie overlap;

21       b.     a list of all other Google accounts that list the same SMS phone
22 number as  the SUBJECT ACCOUNTS;

23       c.     a list of all other Google accounts that list the same recovery e-mail
24 address as the SUBJECT ACCOUNTS;

25       d.     and a list of all other Google accounts that shared the same creation
26 IP address the SUBJECT ACCOUNTS within 30 days of creation;

27

28

ATTACHMENT B - 2
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        e.     Subscriber records for each of the Linked Subject Accounts

2 including 1) names, e-mail addresses, and screen names; 2) physical addresses; 3) records

3 of session times and durations; 4) length of service (including start date) and types of

4 services utilized; 5) telephone or instrument number or other subscriber number or

5 identity, including any temporarily assigned network address such as internet protocol

6 address, media access card addresses, or any other unique device identifiers recorded by

7 Google in relation to the account; 6) account log files (login IP address, account

8 activation IP address, and IP address history); 7) detailed billing records/logs; 8) means

9 and source of payment; and 9) lists of all related accounts.

10        f.     All records and other information (not including the contents of

11 communications) relating to the Linked Subject Accounts, including:

12        i.     Records of user activity for each connection made to or from

13 the Account(s), including log files; messaging logs; the date time, length, and method of

14 connections, data transfer volume; user names; and source and destination Internet

15 Protocol Addresses; cookie IDs; browser type;

16        ii.     Information about each communication sent or received by

17 the Account(s), including the date and time of the communication, the method of

18 communication, and the source and destination of the communication (such as source and

19 destination e-mail addresses, IP addresses, and telephone numbers);

20        iii.     All records pertaining to devices associated with the accounts

21 to include serial numbers, model type/number, IMEI, phone numbers, MAC Addresses.

22 **II.**    **Information to be seized by the government**

23       All information described above in Section I that constitutes fruits, contraband,

24 evidence and instrumentalities of (a) Interstate and foreign travel or transportation in aid

25 of racketeering enterprises in violation of 18 U.S.C § 1952; (b) Transportation for

26 purposes of prostitution in violation of 18 U.S.C. § 2421;  and (c) Money laundering in

27 violation of 18 U.S.C. § 1956  those violations occurring between January 2017 to the

28

ATTACHMENT B - 3
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | present, for each of the SUBJECT ACCOUNTS listed on Attachment A, and any linked

2 | accounts, including the following:

3 |       a.     Content that serves to identify any person who uses or accesses the

4 | subject account or who exercises in any way any dominion or control over the account;

5 |       b.     Content relating to planned, attempted, or successful breaches of or

6 | intrusions into victims' computers or networks;

7 |       c.     Content relating to the creation, acquisition, transfer, sharing, testing

8 | or sale of malicious software;

9 |       d.     Content related to computer programing, software operations, and

10 | networking;

11 |       e.     Content relating to the acquisition, transfer, sharing, sale, or disposal

12 | of servers, e-mail accounts, or other web services accounts used by the account holder or

13 | co-conspirators to facilitate computer intrusions;

14 |       f.     Content that identifies victims of computer intrusions perpetrated by

15 | the account holder or co-conspirators:

16 |       g.     Content that constitute communications in furtherance of the crimes

17 | enumerated above;

18 |       h.     Content relating to the acquisition, transfer, distribution, sharing or

19 | sale of stolen credit card, debit card, gift card, or payment card numbers;

20 |       i.     Content that may identify assets including bank accounts,

21 | commodities accounts, trading accounts, personal property and/or real estate that may

22 | represent proceeds of computer intrusion activity or fraud or are traceable to such

23 | proceeds;

24 |       j.     Content that may reveal the current or past location of the individual

25 | or individuals using the subject account;

26 |       k.     Content that may reveal the identities of and relationships between

27 | co-conspirators;

28 |

ATTACHMENT B - 4
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        l.      Content that may identify any alias names, online user names,

2 "handles" and/or "nics" of those who exercise in any way any dominion or control over

3 the specified account as well as records or information that may reveal the true identities

4 of these individuals;

5        m.    Other log records, including IP address captures, associated with the

6 specified account;

7        n.    Subscriber records associated with the specified account, including

8 1) names, e-mail addresses, and screen names; 2) physical addresses; 3) records of

9 session times and durations; 4) length of service (including start date) and types of

10 services utilized; 5) telephone or instrument number or other subscriber number or

11 identity, Including any temporarily assigned network address such as internet protocol

12 address, media access card addresses, or any other unique device identifiers recorded by

13 Google, Inc. in relation to the account; 6) account log files (login IP address, account

14 activation IP addresses, and IP address history); 7) detailed billing records/logs; 8) means

15 and source of payment; and 9) lists of all related accounts;

16       o.    Records of communications between Google, Inc. and any person

17 purporting to be the account holder about issues relating to the account, such as technical

18 problems, billing inquiries, or complaints from other users about the specified account.

19 This to include records of contacts between the subscriber and the provider's support

20 services, as well as records of any actions taken by the provider or subscriber as a result

21 of the communications.

22       p.    Android identification number, MEID, and cellular telephone

23 number

24       q.    Information identifying accounts that are linked or associated with

25 the SUBJECT ACCOUNTS.

26

27

28

ATTACHMENT B - 5
USAO #2017R01046

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970